STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-06-20

Ketr Mi - 4/5/06

KATHLEEN C. McGEE,

Petitioner

v.

SECRETARY OF STATE
MATTHEW DUNLAP,

Respondent

**DECISION AND ORDER**

This matter is before the court on Kathleen McGee's ("McGee" or "petitioner") petition for review of final agency action pursuant to M.R. Civ. P. 80C.

Mary Adams ("Adams" or "intervenor"), a resident of Garland, Maine, spearheaded an effort to place a referendum question involving tax reform on the 2006 Maine ballot. The ballot question, known as the Taxpayer's Bill of Rights, or TABOR, is phrased, "Do you want to limit increases in state and local government spending to the rate of inflation plus population growth and to require voter approval for all tax and fee increases?" Adams followed the initial procedures for placing the question on the ballot without controversy, having the referendum language approved by the Secretary of State's ("Secretary" or "respondent") staff, and obtaining the pre-printed petition forms to be circulated to the public with a date of issuance of October 21, 2004. A minimum of 50,519 valid signatures (10% of the number of registered voters who participated in the last gubernatorial election) needed to be filed with the Secretary's office in order for the question to be placed on the November, 2006 ballot. On Friday, October 21, 2005, 54,127 signatures were filed with the Secretary ("the Friday petitions"), and on the following Monday, October 24, 2005, an additional 4,024

signatures were filed with the Secretary ("the Monday petitions"). He found that a total of 51,611 valid signatures were filed between the two dates (though not enough valid signatures were included in the Friday petitions), and thus validated the petition. Apparently, a TABOR volunteer inadvertently failed to deliver the complete amount of petitions that had been gathered on October 21, 2005. The filing deadline for these valid signatures is the subject of the 80C petition before the court.

Both the Maine Constitution and state legislation address the citizen initiative process at issue in this case. The Maine Constitution speaks of when a petition can be filed: either "on or before the 50th day after the date of convening of the legislature in first regular session or on or before the 25th day after the date of convening the legislature in second regular session." Me. Const. art. IV, pt. 3, § 18(1). Regarding the TABOR initiative, all parties agree that those dates were January 20, 2005 and January 30, 2006 respectively. Indeed the Secretary of State's website makes reference to these constitutional deadlines as the "Deadlines for Current Citizen Initiatives." The second deadline addressed by the Maine Constitution concerns the age of signatures that can be used for filing petitions: "no signature older than one year from the written date on the petition shall be valid." Me. Const. art. IV, pt. 3, § 18(2).

Title 21-A M.R.S.A. §§ 901-906 (2005) lays out in more detail what citizens must do who wish to exercise their constitutional right to place a question on the ballot. Section 901 establishes the "date of issuance" of the petition as that date upon which the "approved form of the petition is provided to the voter submitting the [petition] application." The date of issuance of the TABOR petition, as all parties agree, was October 21, 2004. Section 903-A focuses on circulation. Section 903-A(1) states: "Filing of petitions in accordance with deadlines specified in the Constitution of Maine, Article IV, Part Third, Section 18 must be completed within one year of the date of issuance

under this chapter." One interpretation of this statute is that the requisite number of petitions had to be filed by October 21, 2005.

Section 903-A(2) states: "Petitions not filed in accordance with the deadlines specified in the Constitution of Maine, Article IV, Part Third, Section 18 within one year of the date of issuance under this chapter are invalid for circulation." This part of the statutes signifies that late petitions would be "invalid for circulation." The parties dispute the relationship between "filing" and "circulation" as far as the one-year time limit is concerned.

McGee, as "any other voter," has the right to commence this action pursuant to 21-A M.R.S.A. § 905(2). The filing of the 80C petition was timely, made within three days of the Secretary's validation of the petition, executed on February 21, 2006. Briefs and replies from all parties were timely filed pursuant to the scheduling order issued by this court.

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this Court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Services*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Board of Exam'r of Psychologists*, 2000 ME 206 ¶9, 762 A.2d 551, 555 (Me. 2000) (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶6, 703 A.2d 1258, 1261 (Me. 1997)). The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *Seider*, 762 A.2d 551 (citations omitted).

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded

great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n*, 684 A.2d at 1306 (citing *Centamore v. Department of Human Services*, 664 A.2d 369, 370 (Me. 1995)).

**Petitioner's Brief.**

The thrust of petitioner's argument "is that the Monday petitions were untimely and invalid as a clear matter of unambiguous statutory law and the Secretary exceeded his authority in accepting them." Petitioner asserts that 21-A M.R.S.A. §§ 901 and 903-A "work in tandem to create a one-year time period for circulating petitions with a beginning date and an end date." Section 901 establishes the "date of issuance" of the petition, in this case, October 21, 2004. Section 903-A requires the filing of those petitions within one year of the date of issuance. Thus McGee makes the straightforward argument that any petitions filed later than one year from the date of issuance, or later than October 21, 2005, would be invalid. The statute is unambiguous: it states that filing of the petitions "must" be completed within that one-year timeframe. *See* § 903-A(1).

McGee first addresses the timeframes outlined by the Maine Constitution. As discussed *supra*, the constitutional deadlines are related to the convening of the legislature, and are meant to be long enough after the convening of the regular sessions to provide time for the representatives to debate the citizen initiative. McGee stresses that the Constitution only supplies an end date by which the petition must be filed, but is silent as to how early the petition can be filed. *See Allen v. Quinn*, 459 A.2d 1098, 1099 (Me. 1983).

The Constitution also requires that no petition signature be more than one year old, but does not specify how that requirement is to be enforced—that is where the statutory regulations on circulation provide guidance. *See* Me. Const. art. IV, pt. 3,

§ 18(2). Prior to the one year limit on circulating petitions, enacted as section 903-A in 1998, there was originally no time limit at all for circulating petitions, and then from 1994-1998, a three year limit. Without the time limit, there was no way to verify that signatures were indeed only one year old, as required by the Constitution: circulators were not required to swear under oath regarding the accuracy of the dates of signatures, but only as to the identity of the signatories. *See* Me. Const. art. IV, pt. 3, § 20. There was thus no efficient or practical way to verify that petitions had not been circulated for more than one year, and thus contained signatures older than one year. The purpose of enacting the one year statutory limit on circulation was thus to bring the law in line with the Constitution and eliminate the potential for forged signatures. Additional legislative intent centered around making sure that citizen initiatives contained fresh and relevant ideas. Petitioner thus emphasizes that legislative debate was centered on confirming the accuracy of dates in petitions, as unlike a signature, a date could be more easily altered.

McGee next underlines the mandatory nature of the deadline created by the statute and Constitution, arguing for a strict interpretation of the law. Section 903-A(1) states in relevant part, "Filing of petitions in accordance with deadlines...*must* be completed within one year..." (emphasis added). According to rules of statutory construction in Maine, "'[s]hall' and 'must' are terms of equal weight that indicate a mandatory duty, action or requirement." *See* 1 M.R.S.A. § 71(9-A) (2005). In addition, section 903-A(2) states that late petitions are "invalid for circulation." McGee urges the court to resist making a distinction between petitions that are "invalid for circulation" and signatures that are filed later than one year from the date of issuance of the petition. Since signatures on petitions are only valid if they are one year old or younger, it is somewhat of a redundancy to say that petitions are not valid for circulation beyond that

one-year period. Another way of approaching this conundrum is to say that in order to be valid, an otherwise legitimate signature must be filed within one year from the date of issuance of the petition. Thus if the signature was gathered within that one year timeframe, but not filed until after that one year deadline, the signature would not be valid. This is the interpretation that McGee urges upon the court, which would necessitate a finding that the Monday petitions should not have been included in the Secretary's tally.

McGee then turns to the powers of the Secretary, and avers that there is no constitutional or statutory provision that allows him "to alter or extend a mandatory deadline for filing petitions, to accept petitions filed after the deadline, or to validate that which the statute itself has rendered invalid." Petitioner cites four cases which all support the proposition that neither the Secretary nor the court has the power to alter a deadline created by statute. *See Bourke v. City of S. Portland*, 2002 ME 155, ¶ 3, 806 A.2d 1255; *City of Lewiston v. Maine State Employees Ass'n*, 638 A.2d 739, 742 (Me. 1994); *Brown v. State, Dep't of Manpower Affairs*, 426 A.2d 880, 887-88 (Me. 1981); *New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 362 A.2d 741, 748 (Me. 1976).

Finally, McGee asserts that the principles of liberal construction that ordinarily apply to citizen initiatives do not allow for relaxing filing deadlines when those deadlines have been enacted to prevent fraud. The Law Court has stated "[w]hen the people enact legislation by popular vote, we construe the citizen initiative provisions of the Maine Constitution liberally in order to facilitate the people's exercise of their sovereign power to legislate." *League of Women Voters v. Sec'y of State*, 683 A.2d 769, 771 (Me. 1996). However, the Law Court has earlier stated that the degree to which a statute should be liberally interpreted must be indicated by the legislature. *See Delano v. City of S. Portland*, 405 A.2d 222, 225 (Me. 1979). McGee contends that the legislature in

this instance is crystal clear about the filing deadline for petitions. McGee concludes by pointing out that this dispute is not about a "fussy technicality," but rather about the importance of following proper procedures for citizen initiatives, such that all voters do not spend time, effort, and dollars to support or defeat a question that should never have made it onto the ballot.

**Respondent Secretary of State's Brief.**

To begin, the Secretary points out that this "appeal marks the first time that the Secretary of State's interpretation and application of the statutory deadline for filing citizen initiative petitions, in 21-A M.R.S.A. § 903-A, has been challenged in Maine." This case is thus one of first impression for the court.

In terms of the facts, the Secretary wishes to emphasize that on the one hand, the Monday petitions were essentially 15 minutes late: the statutory deadline for filing the petitions was 5:00 p.m. on Friday, October 21, 2005, and the inadvertently forgotten petitions, discovered over the weekend, were brought to the Secretary's office by 8:15 a.m. the following Monday. On the other hand, the petitions were not late at all, if the constitutional deadline of January 30, 2006 were observed. With two conflicting deadlines at issue, the Secretary urges that the least restrictive one should be applied, thus furthering the rights of citizens to introduce initiatives. *See Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291, 297.

The Secretary's argument begins where McGee ended, namely that liberal principles of statutory and constitutional construction should govern this case, such that the Secretary acted appropriately and within his jurisdiction when he validated all of the submitted petitions. To support this proposition, in addition to *Allen v. Quinn*, cited by petitioner, *supra*, and other Maine cases, the Secretary references ten additional cases from around the country. *See* 459 A.2d at 1102-03 (Article IV, Part Third, Section 18

"must be liberally construed to facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate.") Alaska, Arizona, Arkansas, California, Colorado, Michigan, Missouri, North Dakota, Oregon, and Washington all view "substantial compliance" as the standard by which citizen initiatives should be judged to comply with statutory and constitutional requirements.[1] The view is that the citizen initiative is as close to a pure form of government by the people as the country can have; as such, the courts should tread very lightly in the area, for fear of interfering with this sacred tenet of democracy.

As this is a case of first impression in Maine, Maine courts have not yet addressed whether the "substantial compliance" standard should be used when reviewing whether procedures have been properly followed in the citizen initiative process. However, the Secretary points out that the standard is "routinely applied in reference to procedural requirements in state election laws, even where the rules of liberal construction do not apply." Substantial compliance speaks to whether or not the basic purpose of a law has been essentially respected. The Secretary cites guidelines from a Colorado Supreme Court case, acknowledging that the case is not binding on this court, suggesting that those guidelines provide a workable model for assessing whether or not in this instance, the filing of the Monday petitions substantially complied with the purpose of the citizen initiative law. *See Loonan v. Woodley*, 882 P.2d 1380, 1384 (Colo. 1994). The factors the Secretary recommends adopting from the Colorado court are as follows:

---

[1] *See e.g., Interior Taxpayers Ass'n v. Fairbanks N. Star Borough*, 742 P.2d 781, 782 (Alaska 1987); *Feldmeier v. Watson*, 123 P.3d 180, 183 (Ariz. 2005); *Porter v. McCuen*, 839 S.W.2d 521 (Ark. 1992); *Assembly v. Deukmejian*, 639 P.2d 939, 947 (Cal. 1982); *Loonan v. Woodley*, 882 P.2d 1380, 1384 (Colo. 1994); *Ferency v. Sec'y of State*, 297 N.W.2d 544, 558 (Mich. 1980); *Missourians to Protect Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. 1990); *McCarney v. Meier*, 286 N.W.2d 780, 786 (N.D. 1979); *State ex rel. McPherson v. Snell*, 121 P.2d 930, 934 (Or. 1942); *Sudduth v. Chapman*, 558 P.2d 806, 809 (Wash. 1977).

> 1) the extent of the [proponents'] non-compliance in the particular ballot issue before the court, that is, a court should distinguish between isolated examples of [the proponents'] oversight and what is more properly viewed as systematic disregard for [statutory and constitutional] requirements, (2) the purpose of the provision violated and whether that purpose is substantially achieved despite the [proponents] noncompliance, and (3) whether it can reasonably be inferred that the [proponents] made a good faith effort to comply or whether the [proponents'] noncompliance is more properly viewed as the product of an intent to mislead the electorate.

*Loonan v. Woodley*, 882 P.2d at 1384.

Before turning to the application of these factors, the Secretary recounts the legislative history behind section 903-A, discussed *supra*, with an emphasis on the need to reduce fraudulent signatures in the initiative circulation process, and to ensure that no signatures were more than one year old. The Secretary contends that both of those purposes were achieved by the Secretary's validation of the petitions in this case. First, the vast majority of petitions were finished circulating by August and September 2005, based on when the circulators swore their oaths verifying that the signatures were true. There is no evidence that the petitions were improperly circulated over the weekend of October 22-23, 2005, which would mean that signatures were more than one year old. The Secretary thus contends that factor (2) from the Colorado case has been satisfied.

With regard to the other Colorado factors, the Secretary maintains that the omission of the Monday petitions from the Friday batch was nothing more than an inadvertent error, not a calculated attempt to "mislead the electorate, to obstruct or complicate review of the petitions by the Secretary of State's office, or to undermine the integrity of the citizens' initiative process." Because the error was inadvertent, it can be inferred that the proponents of the initiative made a good faith effort to collect and file the signatures well before the statutory deadline (as mentioned, most signatures were collected two months before the deadline).

The Secretary's final line of argument revolves around the need to interpret a statute such that it not conflict with the constitution. While case law in Maine certainly supports this notion, the Secretary again reveals the breadth of the concept by citing to cases from North Dakota, Florida, Arizona, Michigan, and Colorado where courts struck down statutes that had more restrictive timelines surrounding the citizen initiative process than those in the state constitutions. *See Allen v. Quinn*, 459 A.2d at 1100.[2] The Maine constitutional deadline for filing of petitions is linked to the convening of the regular sessions of the legislature, and in this case, would have been January 30, 2006. The purposes of section 903-A are to prevent forgery and ensure that signatures are fresh (not older than one year). The court can decide that the purposes of section 903-A were complied with by the Secretary's actions in this case, while also heeding the more liberal constitutionally established deadline, and thus avoid striking down the statute as unconstitutional. The Secretary implies that the constitutionality of section 903-A would be challenged were the court to conclude that it was in conflict with the constitution, and that the section 903-A deadline, in this case, October 21, 2005, controlled.

**Intervenor Mary Adams' Brief.**

As the author of the ballot initiative, Adams asks the court to affirm the Secretary's decision. In some regards, her arguments are different from those of the Secretary.

Adams spends some time discussing the "mandatory" versus "directory" language used in statutes to argue that section 903-A(1)'s use of "must": "Filing of petitions...*must* be completed within one year of the date of issuance..." (emphasis

---

[2] *See e.g., Husebye v. Jaeger,* 534 N.W.2d 811 (N.D. 1995); *State ex rel. Citizens Proposition for Tax Relief v. Firestone,* 386 So.2d 561 (Fla. 1980); *Turley v. Bolin,* 554 P.2d 1288 (Ariz. 1976); *Wolverine Golf Club v. Sec'y of State,* 180 N.W.2d 820 (Mich. App. 1970); *Yenter v. Baker,* 248 P.2d 311 (Colo. 1952).

added) is directory and not mandatory. A determination of whether the language is directory or mandatory is a question of law, based upon a variety of factors outlined in an Opinion of the Maine Attorney General. *Op. Me. Att'y Gen.* 80-92 at 5-6 (May 29, 1980). The Attorney General suggests that statutory procedural requirements may be more directory than mandatory in nature, such that substantial compliance with those procedures will be sufficient. *See id.* Among the factors put forth by the Attorney General regarding the directory nature of a statute are whether it addresses something of convenience over substance; whether it is phrased affirmatively regarding the time and manner of doing acts which constitute the chief purpose of the law; and whether it is an elections law, which are usually viewed as directory. *See id.* Thus even though the term "must" appears in section 903-A(1), Adams contends that the statute is directory in nature, and thus the substantial compliance standard is the one to apply. The fact that a small percentage of the petitions were delivered one business day late compels a finding that the Secretary substantially complied with the statute by certifying the petitions.

Adams next focuses on section 903-A(2) and emphasizes, as McGee anticipated that she would, that petitions over one year old are "invalid for circulation," but presumably not invalid for filing. Adams states that none of the petitions was circulated beyond the one-year deadline, and none of the signatures on those petitions was older than one year. Further, the legislature knows the difference between "filing" and "circulation" and could have written "invalid for filing" in section 903-A(2) but did not. The Secretary not only acted appropriately, but as he was required to in interpreting the statute.

Adams also discusses the relationship between the statute and the Maine constitution. In addition to the arguments propounded by the Secretary, Adams

contends that other deadlines in the petition statutes are tied to the constitutional deadlines regarding the convening of the regular legislative sessions. Significantly, section 905(1) states, "The Secretary of State shall determine the validity of the petition and issue a written decision stating the reasons for the decision within 30 days after the final date for filing petitions in the Department of the Secretary of State under the Constitution of Maine, Article IV, Part Third, Section 17 or 18." *See* 21-A M.R.S.A. § 905(1). Adams points out that the Secretary did not validate the petitions until February 21, 2006, within 30 days of January 30, 2006, but well beyond 30 days of October 21, 2005. McGee has not suggested that the Secretary was late in validating the signatures, implying that she must have accepted that January 30, 2006, or the constitutional deadline, was the one in operation.

Further fleshing out the incompatibility of section 903-A with the constitution, Adams points out that the constitution, by tying petition filing deadlines to legislative sessions, created predictable deadlines, usually falling in January and February each year. McGee's interpretation would lead to petition deadlines falling anywhere in the calendar year, depending on the date of issuance. Additionally, a literal reading of section 903-A would produce an absurd result, limiting the actual time for circulating a petition to three months, not 12: the only constitutional deadline falling within the one year date of issuance would have been January 20, 2005.

Finally, Adams invokes the First Amendment of the U.S. Constitution, equating the direct initiative petition with protected, core political speech. *See Meyer v. Grant*, 486 U.S. 414, 421-22 (1998). Adams asserts that McGee "cannot advance a compelling interest to justify the limitations on the direct initiative process which would result if the Court were to adopt her interpretation of Section 903-A(1)."

**Petitioner's Reply.**

McGee first stresses that principles of liberal construction should only apply when there is some lack of clarity regarding the statute. In section 903-A, the legislature was clear "in its intent to make the requirement mandatory." In *Davric Maine Corp. v. Maine Harness Racing Comm'n*, the Law Court stated "'statutory provisions requiring an act to be done within a certain time are directory and not mandatory or jurisdictional unless the statute manifests a clear intent to the contrary'." 1999 ME 99, ¶ 13, 732 A.2d 289, 294 (citation omitted). While the intervenor cites this case to support *her* position, petitioner also relies on the case, emphasizing the phrase "unless the statute manifests a clear intent to the contrary," as petitioner maintains the statute does in this case. Further, the Law Court has said "[o]ur purpose, in the final analysis, is to determine the meaning that the legislature intended its words to have." *Thurber v. Bill Martin Chevrolet, Inc.*, 487 A.2d 631, 635 (Me. 1985). Petitioner thus stresses that whether a statute is mandatory or directory not only revolves around the language in the statute (the use of "must" and "shall"), but around the underlying legislative intent.

Petitioner also brings up the chronology of the case law stance on statutory language and the revising of the laws on statutory construction in Maine. While the Law Court had declared that it had some flexibility in interpreting laws as either directory or mandatory, the legislature reigned in that flexibility in 1991, with the enactment of 1 M.R.S.A. § 71(9-A). *See Thurber*, 487 A.2d at 635; *Givertz v. Maine Med. Ctr.*, 459 A.2d 548, 554 (Me. 1983). Additionally, specifically with regard to election laws, the legislature enacted 21-A M.R.S.A. § 7 in 1989, which states in relevant part, "[w]hen used in this Title, the words "shall" and "must" are used in a mandatory sense to impose an obligation to act or refrain from acting in the manner specified by the context." Section 903-A(1) uses "must"—"filing of petitions...must be completed

within one year of the date of issuance under this chapter"— leaving no doubt that the statute is mandatory in nature.

Petitioner next questions where in any statute the Secretary is granted the authority to extend the deadline at issue in this case. The petitioner cautions that the "court should be ready to provide some guidance to the Secretary because there are no standards or guidelines in the statute or case law to guide the Secretary in determining how late is too late or which circumstances justify an extension." Petitioner also highlights that the legislative intent behind passage of section 903-A was to curtail fraud in the citizen initiative process. While petitioner does not accuse opposing parties of fraud outright in the filing of these petitions, she does suggest that the Secretary's willingness to accept the Monday petitions without any evidentiary hearing on the issue undermines the thrust of the purpose of the statute. The Opinion of the Maine Attorney General, cited by the opposing parties regarding liberal construction of statutes, also urges courts to pay particular attention to the underlying purpose of a statute when applying principles of liberal construction, opining that such principles should not apply when the purpose of a statute is to prevent fraud in the election process. *Op. Me. Att'y. Gen.* 80-92, at 7 n. 4.

McGee's second focus is on the consistency of section 903-A with the Maine Constitution. Indeed the petitioner points out that legislative debate on changing the petition deadlines from three years to one centered on discouraging fraud and aligning the statutory deadlines with the constitutional ones. She counters intervenor's attributing importance to petitions' being "invalid for circulation" as opposed to "filing" in section 903-A(2) by pointing out that petitions that are invalid for circulation are also invalid for filing, as petitions must first be circulated before they can be filed. Petitioner's reading of the statute is that petitions must be filed within one year of the

date of issuance and within the constitutional deadline for filing. In this case, Mary Adams could have filed her petitions either by January 20, 2005, three months from the date of issuance, or by October 21, 2005, one year from the date of issuance, in order for the question to be on the November 2006 ballot.

Finally, petitioner asserts that Adams would not be denied her right to "core political speech" if the Secretary invalidated the Monday petitions because in no way was her right to circulate petitions hindered; rather, discounting the Monday petitions would ensure that the filing deadlines established by Maine law and constitution would be properly observed.

**Respondent Secretary of State's Reply.**

The Secretary's brief reply continues to emphasize that section 903-A is directory rather than mandatory in nature, and thus substantial compliance with it is all that is required. Invoking the language of a 1924 Supreme Judicial Court opinion, the Secretary asserts that the "very essence of the thing to be done" is to ensure that no signatures are older than one year. *See Opinion of the Justices*, 124 Me. 453, 468-69 (Me. 1924). The filing deadline is a way to assist that the "very essence of the thing" be accomplished, but it is not the only way (suggesting that an alternative would be to examine the date next to each voter's signature on the petition to ensure that it came before the circulator gave his oath).

**Intervenor Mary Adams' Reply.**

Adams' even shorter reply reiterates that section 903-A(2) states that late petitions would be "invalid for circulation," not "invalid for filing," and that the legislature certainly could have used the term "filing" if it chose to do so. Further, "filing" and "circulation" are not synonyms. Adams underscores this point by invoking the maxim *expressio unius est exclusion alterius* (the expression of one thing is

the exclusion of another), contending that this concept is well recognized in Maine. *See Community Telcoms. Corp. v. State Tax Assessor*, 684 A.2d 424, 428 (Me. 1996)(dissenting opinion).

The analysis must start with an examination of the language itself. It is clear that the Constitution of Maine separates the requirements for submission to the legislature from the necessary criteria for an acceptable direct initiative petition. *See* Me. Const. art. IV, pt. 3, § 18(1) & (2). All other things considered, the date by which the petition must be filed with the Secretary of State for consideration by the legislature is the 50th day after convening of the first regular session or the 25th day after convening in the second regular session. *See id.* § 18(1). The separate and distinct requirement by our Constitution provides that signatures on the direct initiative petition must be accompanied by the date placed next to each signature and that no signature older than one year from the written date of the petition shall be valid. *See id.* § 18(2). This requirement is the responsibility of the Secretary of State before filing the petition with the legislature. *See id.* § 18(1). Presumably this requirement is further explained in 21-A M.R.S.A. § 905(1) which requires the Secretary of State to determine the validity of the petition and issue a written decision within 30 days after the final filing date. Accordingly, the plain language of the Constitution presents a filing deadline and then a deadline for the Secretary of State to validate the petition. This requirement is separate and distinct from the requirement regarding the age of the signatures.

The second part of the analysis requires the court to determine whether or not the legislature has provided any guidance in construction and interpretation of statutes, thus providing a starting point for the statutory interpretation. 1 M.R.S.A. § 71(9-A) effective December 1, 1989, instructs that "shall" and "must" are terms of equal weight that indicate a mandatory duty, action or requirement and "shall be observed in the

construction of statutes, unless such construction is inconsistent with the plain meaning of the enactment." 1 M.R.S.A. § 71. Having already applied the plain language standard, the court finds that the statutory construction is not inconsistent with the plain meaning. More particularly, however, the court notes 21-A M.R.S.A. § 7, "When used *in this Title*, the words 'shall' and 'must' are used in a mandatory sense to impose an obligation to act or refrain from acting in the manner specified by the context." (emphasis supplied). This provision, effective in 1989, is part of the General Provisions Chapter of the State of Maine Elections Law.

Equally plain is the language of the statute in question in this proceeding. 21-A M.R.S.A. § 903-A(1) provides that filing of the petition in accordance with the deadlines specified in the Constitution "must be completed within one year of the date of issuance under this chapter." This plain language makes it clear that in addition to meeting the filing requirements of the legislative day, petitions must be completed within one year of the date of issuance. Further, section 903-A(2) makes it clear that the petitions not filed within one year are invalid for circulation, that is, they are not valid for use after the one-year submission deadline found in subsection (1). It is clear that the legislature did not intend to leave the matter of correct dates on signatures to chance. The enforcement mechanism was to be a requirement that one year after the date of issuance the petitions are not valid unless submitted to the Secretary of State making it impossible to forge or fraudulently create a signature date.[3]

The parties cite Law Court opinions calling for the liberal construction of the Constitution. This initiative referendum law follows the principle, "[t]o avoid potential

---

[3] Counsel for the respondent suggests that the comprehensive examination by the Secretary of State of the signatures can reveal telltales signs of improper use of the dates and that is the means by which the Secretary confirms the validity or otherwise of a given signature. This imprecise method is alleviated by the clear legislative mandate.

abridgement, or impairment, of the plenary exercise of legislative power by the people . . .". *Opinion of the Justices*, 275 A.2d 800, 803 (Me. 1971). However, the court notes that the Law Court has held that the registrar's certification required by the Constitution provides a jurisdictional requirement, such that without the certification, a petition was "not a petition within the meaning of the Constitution." *Palesky v. Secretary of State*, 1998 ME 103, ¶ 13, 711 A.2d 129, 133 (*citing Opinion of the Justices*, 114 Me. 557, 567, 95 A. 869, 873 (1915)). The Court goes on to address the argument made by the plaintiff in that case, that the defect could be remedied after the deadline for submission to the Secretary of State, and by footnote further says:

> . . . the Constitution requires that 'the date each signature was made shall be written next to the signature on the petition, and no signature older than one year from the written date on the petition shall be valid'. Me. Const., art. IV, pt. 3, § 18(2) (Supp. 1997). These constitutional requirements are not mere technicalities. Palesky's argument that 'circulators may fill in or correct in any block on a petition except signature which they did [and] . . . Registered voters may correct anything on petitions in they made an error such as date [sic]' is without merit. The Secretary of State *committed no error in strictly applying the constitutional requirements for placing a petition on the ballot.*

*Id.* at 1998 ME ¶ 13, n.5, 711 A.2d at 133, n.5. (emphasis supplied). Such language suggests to this court that while the Constitution may be liberally construed, it is the responsibility of the Secretary of State to strictly apply constitutional requirements as directed by the legislature.

While the respondent and intervenor argue liberal construction and support the authority of the Secretary of State to exercise substantial compliance, it is difficult to imagine applying those principles in light of the entire chapter dealing with ballot questions. 21-A M.R.S.A. §§ 901-906 (2005). The statutes contain the requirement that the application for a referendum question must be signed in the presence of the Secretary of State or a designee or a notary public, and that the approved form be

provided on the "date of issuance." 21-A M.R.S.A. § 901. The Secretary of State shall provide the ballot question to the applicant for the initiative within 10 business days after the applicant has submitted to the Secretary of State written consent, 21-A M.R.S.A. § 901(4); persons circulating a petition must provide the voter the opportunity to read the proposed direct initiative summary, 21-A M.R.S.A. § 901-A(1); the Secretary of State shall include certain statements at the top of the petition, 21-A M.R.S.A. § 901-A(2); the verification and certification of a petition must be worded so that a single verification or certification may cover one or more pages, 21-A M.R.S.A. § 902; the Secretary of State shall prepare complete instructions and provide certain language in bold type or capital letters, 21-A M.R.S.A. § 903; a person may not pay or offer to pay any compensation to a person for the person's signature on the initiative petition, 21-A M.R.S.A. § 904-B; any voter who wishes to challenge the validity of the petitions must commence an action within five days of the Secretary of State's decision and the matter must be heard within 15 days, and the Superior Court must issue its decision within 30 days of the commencement of the trial or within 45 days of the date of the decision of the Secretary of State, 21-A M.R.S.A. § 905(2); a similar mandate is placed on the schedule of the Supreme Judicial Court, 21-A M.R.S.A. § 905(3), and on and on and on. None of these provisions is specifically stated in the Constitution of the State of Maine. Is it the Secretary of State's position that none of these requirements apply to him except through the exercise of substantial compliance? For example, may he miss the statutory deadlines in his discretion? This perception of the requirement would seem to fly in the face of the legislative requirements placed upon the Secretary of State in the initiative referendum statutes.

Even were the Secretary of State to conclude that his only requirement was substantial compliance, no party has presented any demonstrated authority provided to

the Secretary of State by either statute or case law in the State of Maine. A relative comparison of initiative referendum statutes in states holding to the substantial compliance standard have not been presented to this court that demonstrate how it would conduct judicial review of the exercise of the discretion by the Secretary of State. While it is soundly argued that a Secretary of State's responsibility is to protect the inherent right of the voters submitting the petition, this court would suggest it is the responsibility of the Secretary of State to protect the process on behalf of all the citizens of the State.

It has been suggested that the constitutionality of section 903-A may be in question because of perceived inconsistencies with the Constitution. The Law Court has stated, "[w]hen reviewing a statute for its constitutionality, we begin with the basic principal of statutory construction that, 'this Court is bound to avoid an unconstitutional interpretation of a statute if a reasonable interpretation of the statute would satisfy constitutional requirements'." *State v. Cropley*, 544 A.2d 302, 304 (Me. 1988) (quoting *Bossie v. State*, 488 A.2d 477, 479 (Me. 1985). Further, when interpreting conflicting statutes, we must interpret so as "to obtain harmony" and "avoid unreasonable or illogical construction." *Portland Surgery Ctr., LLC v. Comm'r, Dep't of Human Serv.*, 2004 Me. Super. LEXIS 47, *7 (quoting *Pinkham v. Morrill*, 622 A.2d 90 (Me. 1993) and *State v. Niles*, 585 A.2d 181 (Me. 1990)). The constitutional requirement of submission to the legislature provides a deadline designed to assure the legislative body will have sufficient time within its statutory calendar to give proper consideration to the question and to any competing measure should it so decide. This purpose is a separate and distinct matter of public policy from assuring the absence of fraud in the constitutional signature age requirement given the limited time and capabilities of the office of the Secretary of State.

The issue of prevention of fraud, in the constitutional context, has been with us since 1901. In *State v. Rogers,* the Court included the prevention of fraud as a reasonable purpose for the exercise by the legislature of the police powers of the State and found that purpose not in conflict with any provision of the State Constitution. 95 Me. 94, 99, 49 A. 564, 566 (Me. 1901). The Attorney General in his Opinion of May 29, 1980, suggested that in light of unusual facts, a court could conclude that a late filing of the application for a referendum petition was acceptable. However, it states in a footnote:

> Since each election statute must be considered individually, paying particular attention to its underlying purpose, it should not be assumed that we would reach the same conclusion with respect to other laws enacted to regulate initiatives and referenda. For example, we would be far more reluctant to treat as directory a law which was designed to prevent fraud or abuse of the electoral process.

*Op. Me. Att'y Gen.* 80-92 (May 29, 1980, n.4).

It is patently obvious that the legislature has enacted a mandatory scheme to provide a degree of impossibility in the violation of the constitutional provision requiring signatures no older than one year from the date on the petition. The essence of the provision is to remove from the Secretary of State the need to substantiate the dates of the individual signatures in order to meet that one year constitutional timeframe. This obligation is achieved by a requirement that the office of the Secretary of State receive the petitions with their signatures no later than one year from the date of issuance. Any other interpretation would, indeed, be a result inconsistent with the constitution, not within the statutory scheme of Chapter 11 of Title 21-A and meaningless legislation.[4]

---

[4] The Secretary of State has a website containing a page titled, "Citizen Initiative Application Packet." On that page, the respondent provides deadlines of 10 business days for the Secretary of State to review the application, 10 days to examine subsequent drafts and 10 business days to provide the ballot question to the applicant after receiving the applicant's written consent. The website further states "the date the approved form of the petition is provided to the applicant is the **date of issuance. The petition may be**

The entry will be:

Decision of the Secretary of State of February 21, 2006, titled "Determination of the Validity of a Petition for Initiated Legislation Entitled: An Act To Create the Taxpayer Bill of Rights" is REVERSED. The Secretary of State had no authority to accept petitions presented subsequent to October 21, 2005, one year from date of issuance; the matter is REMANDED to the Secretary of State to proceed in accordance with this decision.

Dated: April___3__, 2006

Donald H. Marden
Justice, Superior Court

---

circulated for one year from the date of issuance." http://www.maine.gov/sos/cec/elec/initpak.htm (last visited April 3, 2006). The court presumes the respondent believes he is bound by those deadlines.

Date Filed __2/24/06__ ___Kennebec___ Docket No. __AP06-20__
County

Action ___Petition for Review___
80C

MICHAEL DUDDY ESQ (MARY ADAMS-INTRV.)
PO BOX 597
PORTLAND MAINE   04112

Kathleen McGee                                    VS.    Matthew Dunlap, Sec. of State

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Gerald Petruccelli, Esq.<br>50 Monument Square<br>PO Box 17555<br>Portland, Maine   04112-8555<br>Bruce McGlauflin, Esq. | Phyllis Gardiner, AAG<br>6 State House Station<br>Augusta, Maine   04333-0006 |

| Date of Entry | |
|---|---|
| 2/24/06 | Petition for Review of Final Agency Action, filed. s/Petruccelli, Esq. |
| 2/27/06 | Letter requesting an expedited hearing, filed. s/McGlauflin, Esq. |
| 2/28/06 | Letter entering appearance, filed. s/Gardiner, AAG |
| 3/1/06 | Uncontested Motion to Intervene, filed. s/Duddy, Esq.<br>Proposed Order, filed. |
| 3/6/06 | Certification of Record, filed. s/Gardiner, AAG    ( in vault on back shelf)<br>Index to Agency Record, filed. s/Gardiner, AAG |
| 3/7/06 | MOTION TO INTERVENE, Marden, J.<br>Mary Adams' Motion to Intervene is GRANTED.<br>Copies mailed to attys of record. |
| 3/9/06 | Conference of Counsel, Hon. Donald Marden J.<br>Court to issue order. |
| ------ | SCHEDULING ORDER, Marden, J.<br>Copies mailed to attys. of record<br><br>Case set for hearing 3/24/06 at 11:00 a.m. |
| 3/14/06 | Brief of Respondent Secretary of State, filed. s/Gardiner, AAG |
| -------- | Petitioner's Brief, filed. s/McGlauflin, Esq. |
| -------- | Intervenor's Memorandum of Law, filed. s/Duddy, Esq. |
| 3/15/06 | Exhibit 1 to be attached to Intervenor's Brief, filed. |
| 3/21/06 | Intervenor's Memorandum of Law in Reply, filed. s/Duddy, Esq. |
| 3/21/06 | Respondent's Reply Brief, filed. s/Gardiner, AAG. |