Honorable Toby Nixon State Representative, 45th District PO Box 40600 Olympia, WA 98504-0600
Dear Representative Nixon:
By letter previously acknowledged, you have requested our opinion on the following paraphrased questions:
 1. Does Laws of 2005, ch. 239, which provides that a declaration be printed on the reverse side of an initiative or referendum petition, require that a signature gatherer complete the declaration and sign it under penalty of law?
 2. Under what circumstances does RCW 29A.72.170 authorize the secretary of state to refuse to file petitions that do not comply with the requirements of Laws of 2005, ch. 239?
 BRIEF ANSWER
The answer to your first question is no. Laws of 2005, ch. 239 does not require a signature gatherer to sign the declaration required to be printed on the reverse side of the petition. With regard to your second question, if a petition does not contain the statement [original page 2] required by Laws of 2005, ch. 239, RCW 29A.72.170 authorizes the secretary of state to refuse to file the petition.
 BACKGROUND
Your questions concern amendments to the statutes that prescribe the form for initiative and referendum petitions. RCW29A.72.110 sets out the form for initiatives to the legislature. Prior to the 2005 amendments, RCW 29A.72.110 provided:
 Petitions for proposing measures for submission to the legislature at its next regular session must be substantially in the following form:
 The warning prescribed by RCW 29A.72.140; followed by:
 INITIATIVE PETITION FOR SUBMISSION TO THE LEGISLATURE
 To The Honorable ___________, Secretary of State of the State of Washington:
 We, the undersigned citizens and legal voters of the State of Washington, respectfully direct that this petition and the proposed measure known as Initiative Measure No. . . . . and entitled (here set forth the established ballot title of the measure), a full, true, and correct copy of which is printed on the reverse side of this petition, be transmitted to the legislature of the State of Washington at its next ensuing regular session, and we respectfully petition the legislature to enact said proposed measure into law; and each of us for himself or herself says: I have personally signed this petition; I am a legal voter of the State of Washington in the city (or town) and county written after my name, my residence address is correctly stated, and I have knowingly signed this petition only once.
 The petition must include a place for each petitioner to sign and print his or her name, and the address, city, and county at which he or she is registered to vote.
RCW 29A.72.110 (Laws of 2003, ch. 111, § 1812) (emphasis added).
RCW 29A.72.120 prescribes the form of a petition for an initiative to the people and RCW 29A.72.130 prescribes the form of a petition for a referendum. The emphasized language of RCW29A.72.110 is also found in RCW 29A.72.120 and .130. All three statutes also require that the petition form contain the warning set out in RCW 29A.72.140, which provides:
 The word "warning" and the following warning statement regarding signing petitions must appear on petitions as prescribed by this title and must be printed on each petition sheet such that they occupy not less than four square inches of the front of the petition sheet.
 [original page 3]
 WARNING Every person who signs this petition with any other than his or her true name, knowingly signs more than one of these petitions, signs this petition when he or she is not a legal voter, or makes any false statement on this petition may be punished by fine or imprisonment or both.
In 2005, the legislature amended the three statutes setting out the forms for petitions by adding the following language, which is the subject of your inquiry:
 The following declaration must be printed on the reverse side of the petition:
 I, ___________________________, swear or affirm under penalty of law that I circulated this sheet of the foregoing petition, and that, to the best of my knowledge, every person who signed this sheet of the foregoing petition knowingly and without any compensation or promise of compensation willingly signed his or her true name and that the information provided therewith is true and correct. I further acknowledge that under chapter 29A.84 RCW, forgery of signatures on this petition constitutes a class C felony, and that offering any consideration or gratuity to any person to induce them to sign a petition is a gross misdemeanor, such violations being punishable by fine or imprisonment or both.
 RCW 9A.46.020 applies to any conduct constituting harassment against a petition signature gatherer. This penalty does not preclude the victim from seeking any other remedy otherwise available under law.
RCW 29A.72.110-.130, amended by Laws of 2005, ch. 239, §§ 1-3. These amendments took effect January 1, 2006. Laws of 2005, ch. 239, § 4.
The form of the petition is important because the secretary of state may refuse to file a petition not containing information required by law. RCW 29A.72.170 provides:
 The secretary of state may refuse to file any initiative or referendum petition being submitted upon any of the following grounds:
 (1) That the petition does not contain the information required by RCW 29A.72.110, 29A.72.120, or 29A.72.130.
 (2) That the petition clearly bears insufficient signatures.
 (3) That the time within which the petition may be filed has expired.
 [original page 4] In case of such refusal, the secretary of state shall endorse on the petition the word "submitted" and the date, and retain the petition pending appeal.
 If none of the grounds for refusal exists, the secretary of state must accept and file the petition.
RCW 29A.72.170 (emphasis added).
 ANALYSIS 1. Does Laws of 2005, ch. 239, which provides that adeclaration be printed on the reverse side of an initiative orreferendum petition, require that a signature gatherer completethe declaration and sign it under penalty of law?
Your first question asks whether the 2005 amendments require a signature gatherer to write his or her name in the blank after the word "I" and sign the declaration. In other words, if the signature gatherer fails to fill in his or her name and sign the declaration, does the petition fail to meet the statutory requirements of the 2005 amendments?
"In construing a statute, the court's objective is to determine the legislature's intent. If the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." State v. Jacobs,154 Wn.2d 596, 600, 115 P.3d 281 (2005) (citation and internal punctuation omitted). A statute is ambiguous if it is "subject to more than one reasonable interpretation". In re the Marriage ofKovacs, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).
In our view, the 2005 amendments are ambiguous. On one hand, the following language appears to require a declaration:
The following declaration must be printed on the reverse side of the petition:
 I, _______________________, swear or affirm under penalty of law that I circulated this sheet of the foregoing petition, and that, to the best of my knowledge, every person who signed this sheet of the foregoing petition knowingly and without any compensation or promise of compensation willingly signed his or her true name and that the information provided therewith is true and correct.
Laws of 2005, ch. 239, § 1. The amendments refer to the statement as a "declaration", there is a blank space for one to fill in his or her name, and the "declaration" uses the language "swear or affirm under penalty of law". Laws of 2005, ch. 239, § 1. It includes a statement, ostensibly that of the signature gatherer, regarding the actions of the voters who have signed the petition. Laws of 2005, ch. 239, § 1. This language is similar to the language required for declarations under
[original page 5] RCW 9A.72.085 ("I certify (or declare) under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct").
It seems anomalous that the legislature would require each petition to include a "declaration" but did not intend that the declaration actually be filled out. However, the 2005 amendments do not include a place to sign or a signature block, in contrast to the declaration under RCW 9A.72.085. Nor do the 2005 amendments contain any language expressly requiring that the "declaration" be signed or specifying the consequences of failure to fill out and sign the declaration. Moreover, the remaining text in the 2005 amendments is not consistent with the typical language of a signed declaration. That part of the text required by the 2005 amendments provides:
 I further acknowledge that under chapter 29A.84 RCW, forgery of signatures on this petition constitutes a class C felony, and that offering any consideration or gratuity to any person to induce them to sign a petition is a gross misdemeanor, such violations being punishable by fine or imprisonment or both.
 RCW 9A.46.020 applies to any conduct constituting harassment against a petition signature gatherer. This penalty does not preclude the victim from seeking any other remedy otherwise available under law.
Laws of 2005, ch. 239, § 1.
Thus, the remaining text acknowledges the law governing improper signature gathering and sets out the penalty for harassing signature gatherers, but without expressly requiring anyone to swear to facts other than the existence of these laws. These sentences could be part of a "warning" to be printed on the petition. Still, a mere warning would not typically begin with the language characteristic of a signed declaration.
These inconsistencies in the text of the 2005 amendments create ambiguity. Some language points to the conclusion that the amendments require a sworn declaration, while other language (and omissions) suggests that the statement serves as a warning. When a statute is ambiguous, "this court may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent". Rest. Dev., Inc. v.Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003).
Laws of 2005, ch. 239 was introduced as House Bill (HB) 1222. At the initial hearing on HB 1222 before the House Committee on State Government Operations Accountability, proponents of the bill explained that HB 1222 "represents last session's version of 1660, which did pass out of the House the last two sessions and failed to make it past the Senate". * Test. Pat Thompson, Hr'g HB 1222, House Comm. on State Gov't Operations Accountability, Feb. 8, [original page 6] 2005.[1] House Bill (HB) 1660, which was not enacted, is useful because it shows where much of the language of HB 1222 originated and how it evolved in the later bill.
Section 1 of HB 1660 was a substantive section, which unambiguously would have required a signed statement:
A new section is added to chapter 29.79 RCW[2] to read as follows:
 Each person circulating a ballot measure petition must sign before a notary public a statement contained on each sheet of the petition affirming, under penalty of perjury, that every person signing that sheet signed his or her name and correctly provided the accompanying information on the signature sheet, and that the person was eligible to sign the petition.
HB 1660, § 1 (emphasis added). Section 2 of HB 1660 would have amended RCW 29A.72.110-.130 by adding the following language to the petitions:
 I, _______________________, swear or affirm under penalty of perjury, that every person who signed this sheet of the foregoing petition signed his or her name and the accompanying required information on the signature sheet correctly, and that the person was eligible to sign this petition.
 Signature ___________________________________________ Post Office Address _________________________________
 State of Washington County of _______________
 Signed or attested before me on _______ by ______________
 ____________________________ (Signature) (Seal or stamp)
 ____________________________ Title My appointment expires ____________________
HB 1660, § 2.
[original page 7] HB 1660 was amended several times. Second Engrossed Substitute House Bill (ESSHB) 1660 was different from the original version of the bill in several important respects. First, section 1 of HB 1660, which would have required signature gatherers to sign before a notary public, was eliminated. The text of the statement to be included on petitions was also changed. Section 1 of ESSHB 1660 would have amended RCW 29A.72.100-.130 to add the following language:
The petition must also include the following statement:
 I, ____, swear or affirm under penalty of law that I circulated this sheet of the foregoing petition, and that, to the best of my knowledge, every person who signed this sheet of the foregoing petition knowingly and without any compensation or promise of compensation willingly signed his or her true name and that the information provided therewith is true and correct. I further acknowledge that under chapter 29A.84 RCW, forgery of signatures on this petition constitutes a class C felony, and that offering any consideration or gratuity to any person to induce them to sign a petition is a gross misdemeanor, such violations being punishable by fine or imprisonment or both.
Signature ___________________________________________
 Print Name __________________________________________
 Print Street Address ________________________________
 Print City, State, Zip Code _________________________
ESSHB 1660, § 1.
HB 1660 and ESSHB 1660 are instructive in understanding HB 1222 in two respects. First, HB 1660, section 1 included a substantive provision requiring the signature gatherer to sign the petition before a notary. This provision was eliminated from ESSHB 1660 and does not appear in HB 1222. Second, both HB 1660, section 2 and ESSHB 1660, section 1 had a place for the signature gatherer to sign. The signature line is missing from HB 1222. Comparing HB 1660 to HB 1222, it appears that the legislature knowingly eliminated the requirement that signature gatherers sign a declaration.
The legislative debate on HB 1222 also demonstrates ambiguity over the import of the new language. Two of the sponsors of HB 1222 were Representatives McDermott and Nixon. When HB 1222 was in committee, Representative McDermott and Representative Nixon each stated that HB 1222 would require signature gatherers to fill in their names and sign the declaration on the petition. Representative McDermott stated:
 Thank you Madam Chair. Unfortunately, we have seen instances in the last several years of some fraud and deceit in signature gathering of initiatives and this piece of legislation is one step to being able to hold the signature gatherers accountable, in no way impeding them, inhibiting their ability to gather [original page 8] signatures, but getting their name on, their signature on every initiative petition so that if there are problems we can go back and inquire about them. We'd ask for the committee's support.
House Comm. on State Gov't Operations Accountability, Hr'g on HB 1222, Feb. 8, 2005[3] (emphasis added). Representative Nixon also stated in the committee hearing that signature gatherers would have to sign the petitions:
 Yeah, to, to clarify, at least the intent as I understood it, was that each separate individual page that is being circulated would have this statement on it and that the person who circulated that page would be the one that has to sign that statement. Now, whether that's at the top of the petition or at the bottom or at the back or wherever it might be, I think that also goes to address Representative Clements' concern if everyone who has a copy of the petition sees this statement and at least takes the time to read it and know that they will have to sign it at some point, that serves to inform them of their responsibilities.
House Comm. on State Gov't Operations Accountability, Hr'g on HB 1222, Feb. 8, 2005 (emphasis added).
However, when HB 1222 reached the House floor for debate, these two sponsors described different understandings. Representative McDermott continued to say that signature gatherers would have to sign the petition. Representative Nixon explained that HB 1222 informed signature gatherers of their responsibility but that the lack of a signature would be of no consequence. Representative McDermott stated:
 Thank you Mr. Speaker. As unfortunate as it is, there are rare cases of fraud and forgery in the collection of signatures for initiatives, referendum petitions, in the State of Washington. This bill would require the signature gatherer to sign each page of the petition that they have gathered those signatures and aware of penalties for those acts. It in no way inhibits the gathering of signatures and provides us more accountability for the signatures that are gathered. I would ask the body to join with me in supporting this piece of legislation.
House Floor Debate HB 1222, Mar. 8, 2005[4] (emphasis added). In contrast, Representative Nixon stated:
 [original page 9] Thank you Mr. Speaker. I agree with the good gentlemen. This bill, its primary purpose is to make sure that people who are gathering signatures on initiative and referendum petitions are aware of the penalties associated with forging signatures or paying anyone to sign a petition. It does not create any new penalty. It does not penalize those who fail to sign the statement. But the statement does have to be printed on the initiative petitions. It also does not invalidate the petition forms if the signature is not provided of the circulator. So, again, the primary purpose is to provide information to the petition circulators and I urge your support.
House Floor Debate HB 1222, Mar. 8, 2005 (emphasis added).
After the House passed HB 1222, it was passed by the Senate with amendments, none of them directly bearing on this discussion. When the bill returned to the House, Representatives McDermott and Nixon again emphasized different things. Representative McDermott again described the bill as requiring the signature gatherer to sign the statement:
 Thank you Mr. Speaker. These, the Senate has amended this bill to require that the person gathering the signatures actually sign the back of the petition
and that we restate and clarify that anyone harassing the signature gatherer is guilty of harassment charges for those actions. I would ask the body to join me in concurring in this House bill.
House Floor Debate EHB 1222, Apr. 20, 2005[5] (emphasis added). In contrast, Representative Nixon described the statement only as a notice mechanism for signature gatherers:
 Thank you Mr. Speaker. We concur the Senate improved the bill and urge your yes vote. I do note that there were a number of no votes on original passage of this bill off the floor and so would advise members to check how they voted originally. Many of the concerns that had been expressed by constituents about the bill are in fact not true. All the bill really does is inform signature gatherers of the legal penalties associated with falsifying signatures or, and other ways crimes associated with circulating petitions. It does not, in my opinion, increase the likelihood that any signature gatherer would be harassed in any way. And I urge your yes vote.
House Floor Debate EHB 1222, Apr. 20, 2005 (emphasis added). We find the comments of Representatives McDermott and Nixon illuminating because they demonstrate inconsistent understandings about what HB 1222 would require.
[original page 10] We see two possible interpretations of the text starting with: "I, _______________________, swear or affirm under penalty of law". Laws of 2005, ch. 239, § 1. One interpretation is that the legislature intended to require signature gatherers to sign an oath which would subject them to the penalty of law if the statement was false.[6] Second, the statement was intended only as a warning to signature gatherers, but there was no intent to require that they fill in a name or sign the statement.
Turning to the first alternative, we conclude that the 2005 amendments do not establish a requirement for a declaration that, if false, could subject signature gatherers to legal penalty. We reach this conclusion for two reasons. First, the evolution of the proposal to put some sort of statement on the petitions from HB 1660 to HB 1222 persuades us that the legislature did not intend such a declaration. The elimination of the substantive requirement in section 1 of HB 1660 and the elimination of a line upon which to sign in HB 1222 indicate that the legislature probably intended to eliminate the signature requirement. Second, even if the legislature intended to punish false swearing, the 2005 amendments are not specific enough to accomplish this purpose. The 2005 amendments provide that a person states that "I, _______________________, swear or affirm under penalty of law". Laws of 2005, ch. 239, § 1. The amendments do not specify what "penalty of law" would apply and are unclear as to which parts of the "declaration" (if not all of it) are subject to the signature requirement.
One would first consider whether this refers to perjury in the second degree,
 RCW 9A.72.030, or false swearing, RCW 9A.72.040. A person is guilty of perjury in the second degree if
 in an examination under oath under the terms of a contract of insurance, or with intent to mislead a public servant in the performance of his or her duty, he or she makes a materially false statement, which he or she knows to be false under an oath required or authorized by law.
RCW 9A.72.030(1). A person is guilty of false swearing if "he makes a false statement, which he knows to be false, under an oath required or authorized by law". RCW 9A.72.040(1). Both perjury in the second degree and false swearing require the statement be made under an oath "required or authorized by law". This is a term defined in the statute:
 An oath is "required or authorized by law" when the use of the oath is specifically provided for by statute or regulatory provision or when the oath is administered by a person authorized by state or federal law to administer oaths[.]
[original page 11] RCW 9A.72.010(3) (emphasis added). Thus, the 2005 amendments could only subject a person to a criminal penalty for perjury or false swearing if the use of the oath is specifically "provided for" by statute. Unlike section 1 of SB 1660, discussed above, the 2005 amendments lack any express requirement of an oath.[7]
Moreover, it would violate the rule of lenity to read the 2005 amendments as requiring the oath. In criminal cases, "the rule of lenity is a basic and required limitation on a court's power of statutory interpretation whenever the meaning of a criminal statute is not plain. Under the rule of lenity, any ambiguity in the meaning of a criminal statute must be resolved in favor of the defendant." In re the Personal Restraint Pet. of Hopkins,137 Wn.2d 897, 901, 976 P.2d 616 (1999). The 2005 amendments are ambiguous whether a signed declaration is required, so the rule of lenity would apply to prevent a signature gatherer from being convicted of perjury or false swearing if he or she signed a false statement.[8]
A variant interpretation of the 2005 amendments is that the statement is a warning, not an oath, but that signature gatherers must still sign the statement. We also reject this construction. Although Representative McDermott consistently stated that a signature was required, nothing in the 2005 amendments specifies that the signature gatherer must sign the statement, and the form of the "declaration" contains no line upon which to sign. HB 1660 demonstrates that the legislature knows how to require a signature and a signature line. Furthermore, since we have already concluded that there would be no penalty for signing falsely, we are reluctant to conclude that the signature is required but without any legal consequences for not signing, or even for signing a false declaration.
This leaves us with the second interpretation, which seems most in line with the language of the bill and its legislative history. The 2005 amendments simply require a statement to be included on the petition that warns signature gatherers about the penalties associated with forging signatures or paying anyone to sign a petition. We recognize the rule of statutory construction that the "drafters of legislation are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute". State v. Roggenkamp, 153 Wn.2d 614,624, 106 P.3d 196 (2005). Our interpretation of the 2005 amendments appears to render the words "I, ____, swear or affirm under penalty of law" superfluous. The[original page 12] declaration does provide a signature gatherer with a place to fill in his or her name to show who circulated a particular petition for signatures. However, in this case, it appears that legislative compromise while enacting HB 1222 resulted in a statute containing language of slight significance. Laws of 2005, ch. 239 is an ambiguous statute and, in our judgment, the best interpretation of it is that the statement required on the petition is an additional warning about the consequences of false signatures, but no more.[9]
 2. Under what circumstances does RCW 29A.72.170 authorize thesecretary of state to refuse to file petitions that do not complywith the requirements of Laws of 2005, ch. 239?
RCW 29A.72.170(1) provides that the "secretary of state may refuse to file any initiative or referendum petition being submitted [if the] petition does not contain the information required by RCW 29A.72.110, 29A.72.120, or 29A.72.130". Your second question asks whether the secretary of state may refuse to file the petitions if they do not comply with the requirements of Laws of 2005, ch. 239. Our answer to your first question controls the response to question 2. Since the 2005 amendments do not require a signature gatherer to sign the petition, the lack of a name and signature would not be a basis for refusal to file the petitions. However, we conclude that the secretary of state is authorized to refuse to file petitions that omit the statement.
Article II, section 1 of the Washington Constitution establishes the rights of initiative and referendum. Article II, section 1 "is self-executing, but legislation may be enacted especially to facilitate its operation". Const. art. II, § 1(d). After Amendment 7, which established the right of initiative and referendum, the legislature enacted laws to facilitate the process. In State ex rel. Case v. Superior Court for ThurstonCounty, 81 Wash. 623, 143 P. 461 (1914), the Court discussed the standard for legislation to facilitate the right of initiative and referendum. According to the Court:
 [T]here is strongly suggested, in the language of the constitution and this law, a required liberal construction, to the end that this constitutional right of the people may be facilitated, and not hampered by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake
in the exercise by the people of this constitutional right.
State ex rel. Case, 81 Wash. at 632 (emphasis added); seealso State ex rel. Donohue v. Coe, 49 Wn.2d 410, 416,302 P.2d 202 (1956).
[original page 13] RCW 29A.72.170 authorizes the secretary of state to refuse to file petitions that do not contain the information required in RCW 29A.72.110-.130. As applied to your questions, this means that if the initiative sponsor failed to include the statement required by the 2005 amendments on a petition, none of the signatures on that petition would be counted. This is a serious consequence. As the Court explained inState ex rel. Howell v. Superior Court for Thurston County,97 Wash. 569, 574-75, 166 P. 1126 (1917), "we are not dealing with the rights of [the sponsor] alone, but with the rights of the several thousand other persons whose names are signed to all these petitions". In State ex rel. Howell, the referendum sponsor submitted some signatures attached to a petition on June 4 and some additional signatures on June 6. The secretary of state refused to accept the signatures submitted on June 6, even though it was within the deadline set out in the constitution. The Court ruled that the secretary of state must accept the petitions submitted on June 6. In reaching this conclusion, the Court noted that
 there is nothing in our conclusion here reached that will in the least impair the effectiveness of the facilitating act in so far as it looks to the prevention of fraud and mistake in the exercise by the people of this constitutional right.
State ex rel. Howell, 97 Wash. at 578 (emphasis added).
The Court took up this question again in Sudduth v. Chapman,88 Wn.2d 247, 558 P.2d 806, 559 P.2d 1351 (1977). Sudduth
considered the constitutionality of RCW 29.79.200, which provided: "If the secretary of state finds the same name signed to more than one petition he shall reject the name as often as it appears." Sudduth, 88 Wn.2d at 249. The Court ruled that RCW 29.79.200 was unconstitutional because the intent of the constitution "was to require that an initiative measure be placed upon the ballot if the requisite number of registered voters sign it. Refusing to count a duplicate signer as one petitioner frustrates, rather than furthers this purpose." Id. at 251. In reaching this conclusion, the Court again asked:
 Is the measure nevertheless necessary to "fairly guard against fraud and mistake"? The respondent does not argue that it is. While there are 20 states having constitutions which provide for the initiative and referendum, he does not suggest that any of them has found it necessary to enact a provision such as that found in RCW 29.79.200. . . .
Id. (citations and internal punctuation omitted).
While we concluded in response to your first question that the 2005 amendments do not require a signed declaration on each petition, the amendments do require a specific printed statement, just as they require each petition to contain certain other information, such as the measure's ballot title and full text. Based on these authorities, we conclude that RCW 29A.72.170
authorizes the secretary of state to refuse to file petitions that do not comply with RCW 29A.72.110-.130 when the requirement in those statutes is designed to prevent fraud or mistake in the exercise of the constitutional right. In this case, the statement required by the 2005 amendments to be printed on the petitions informs signature gatherers about the penalties associated with forging signatures or paying anyone to sign a petition. This requirement is [original page 14] reasonably designed to prevent such fraud. For this reason, we conclude that the secretary of state may refuse to file petitions that do not contain the language required by the 2005 amendments. This could have the effect of not counting valid signatures, but it could also have the effect of eliminating or reducing the number of forged or otherwise invalid signatures because signature gatherers who are aware of the penalties for improperly gathering signatures are less likely to violate the law. Because inclusion of the statement is designed to eliminate fraud and it can be easily complied with, we conclude that the secretary of state may refuse to file petitions without the statement.
The Colorado Supreme Court reached a similar conclusion inLoonan v. Woodley, 882 P.2d 1380 (Colo. 1994). Colorado also has initiatives by the people. One requirement imposed on signature gatherers in that state is that to "each petition section shall be attached a signed, notarized, and dated affidavit executed by the registered elector who circulated the petition section, which shall include a statement that he or shehas read and understands the laws governing the circulation ofpetitions". Loonan, 882 P.2d at 1383. The law in Colorado also provided that a petition "which fails to conform to therequirements of this article or is circulated in a manner other than that permitted in this article shall be invalid". Id. InLoonan, the signature gatherers' affidavits failed to include the language that they had read the laws governing the circulation of petitions. The question was whether the signatures on the petitions with defective affidavits could be counted.
As in Washington, the Colorado Supreme Court has held that the
 constitutional and statutory provisions governing the initiative process should be liberally construed so that the constitutional right reserved to the people may be facilitated and not hampered by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this constitutional right.
Loonan, 882 P.2d at 1384 (internal quotation marks omitted). The Court nevertheless held that a "purpose of the affidavit is the assurance the circulators were aware of their important role in implementing all of the statutory safeguards and in assuring the validity of the signatures they collect". Id. at 1385. And the Court found that the "omission of the required affidavit language conclusively demonstrates that the circulators of the petition did not read those laws much less understand them".Id. at 1386. For this reason, the Court concluded that the affidavits did not comply with the law and found the petitions with the defective affidavit invalid. Id. A federal court subsequently upheld Colorado's affidavit requirement from a federal constitutional challenge, reasoning that "[t]he affidavits `ensure that circulators, who possess various degrees of interest in a particular initiative, exercise special care to prevent mistake, fraud, or abuse in the process of obtaining thousands of signatures of only registered electors throughout the state." American Constitutional Law Found., Inc. v. Meyer,120 F.3d 1092, 1099-1100 (10th Cir. 1997), aff'd sub. nom.Buckley v. American Constitutional Law Found., Inc.,525 U.S. 182, (1999) (quoting Loonan, 882 P.2d at 1388-89).
[original page 15] The requirement in Colorado is different from the requirement in the 2005 amendments. However, both are designed to protect the initiative process from fraud. It therefore provides significant precedent for our conclusion that the secretary of state may refuse to file petitions that do not contain the printed statement required by the 2005 amendments.
We trust this opinion will be of assistance to you.
Sincerely,
ROB MCKENNA Attorney General
WILLIAM B. COLLINS Deputy Solicitor General
:wrs
[1] Available online through TVW at: http://www.tvw.org/MediaPlayer/Archived/WME.cfm?EVNum = 2005020128TYPE=A.
[2] The statutes governing initiative and referendum elections were recodified as RCW 29A.72A in 2003. Laws of 2003, ch. 111.
[3] Available online through TVW at: http://www.tvw.org/MediaPlayer/Archived/WME.cfm?EVNum = 2005020128TYPE=A.
[4] Available online at: http://www.tvw.org/MediaPlayer/Archived/WME.cfm?EVNum=2005030099B TYPE=A.
[5] Available online at: http://www.tvw.org/MediaPlayer/Archived/WME.cfm?EVNum=2005040166A TYPE=A.
[6] A variant of this interpretation would be to construe the statute as requiring the declaration to be signed and permitting the secretary of state to decline to file petitions not containing the signed declaration, but not as subjecting the signer to legal penalties for failing to sign or for signing a false declaration. We discuss and reject this variation below.
[7] HB 1660, § 1 provided:
 A new section is added to chapter 29.79 RCW to read as follows:
 Each person circulating a ballot measure petition must sign before a notary public a statement contained on each sheet of the petition affirming, under penalty of perjury, that every person signing that sheet signed his or her name and correctly provided the accompanying information on the signature sheet, and that the person was eligible to sign the petition.
[8] Although this demonstrates that the statement would not be the basis for a false swearing or perjury charge, a person who forges signatures or offers consideration to signers may still be charged under RCW 29A.84, as indicated by the statement. Our conclusion is limited to whether there is any "penalty of law" for the declaration which is necessary to determine whether the amendments require a signed statement.
[9] While researching the opinion, we received comments from several parties suggesting that it would be unconstitutional to read the 2005 amendments to require a signed declaration by the signature gatherer, or to reject petitions missing such a signed declaration, as an undue burden on the exercise of the right of initiative and referendum as set forth in article II, section 1
of the Washington Constitution. In light of our conclusions, we express no opinion here as to the extent of the legislature's authority to enact amendments imposing additional requirements concerning the contents of ballot measure petitions.